IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Francis Hubbard,**

      **Plaintiff,**

**v.**                                                                                                       Case No. 16-cv-2444-JWL

**Jefferson County Board of
County Commissioners,**

      **Defendant.**

## MEMORANDUM & ORDER

Plaintiff Francis Hubbard filed this lawsuit against the Board of County Commissioners of Jefferson County, Kansas alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Kansas Age Discrimination in Employment Act, K.S.A. § 44-1111 et seq. Specifically, plaintiff alleges that the County terminated his employment on the basis of his age. This matter is presently before the court on defendant's motion for summary judgment (doc. 47). As will be explained, the motion is denied.

**I.  Facts**

The following facts are uncontroverted, stipulated in the pretrial order, or related in the light most favorable to plaintiff as the nonmoving party. Plaintiff Francis "Babe" Hubbard was hired by Jefferson County as a grader operator in 1996. In 2005, plaintiff was promoted to Road and Bridge foreman and, in 2008, to Road and Bridge superintendent, where he was responsible for the road and bridge department of the County. In 2014, plaintiff asked the County

Commissioners if he could step down from the superintendent position because of health issues. In January 2014, plaintiff accepted a pay cut and a voluntary demotion to road foreman. At the same time as plaintiff's demotion, the County hired Bill Noll as Public Works Director after he served two years as the County's zoning administrator. Plaintiff's demotion to foreman and Mr. Noll's promotion to Public Works Director were both effective on January 26, 2014.

In early February 2014, shortly after Mr. Noll assumed his position, he began asking a number of employees, including plaintiff, whether they had set retirement dates. According to the County, Mr. Noll had been advised that he would likely experience significant employee turnover in the next two years and that he should "check" with certain employees for purposes of succession planning within the department. Plaintiff testified that Mr. Noll asked him what his "intentions" were with respect to retiring from the County. Plaintiff told Mr. Noll that he did not intend to retire for a few more years.

The County contends that Mr. Noll became concerned with plaintiff's performance almost immediately upon assuming the role of Public Works Director. Ultimately, Mr. Noll documented these concerns in a two-page memorandum that, according to plaintiff's evidence, was created two weeks after plaintiff's termination. There is no evidence that Mr. Noll documented any concerns during February or March 2014 or that he raised any specific concerns about plaintiff with the County Commissioners. The memorandum covers a variety of concerns about plaintiff's employment with the County, including his treatment of other employees (*e.g.*, allegedly referring to other employees as "retarded monkeys" and "lazy bastards"); plaintiff's alleged efforts to undermine Mr. Noll's authority; plaintiff's alleged

2

refusal to complete managerial tasks that he was directed to complete; and plaintiff's failure to apply for federal grants.

According to the County, Mr. Noll shared a copy of the two-page memorandum with the County Commissioners on April 7, 2014 during an executive session for the purpose of getting the approval of the Commissioners on the decision to terminate plaintiff's employment. Again, plaintiff's evidence demonstrates that the memorandum was not even created until late April 2014 such that it could not have been shared with the County Commissioners on April 7, 2014. In any event, Mr. Noll testified that the County Commissioners received a copy of the memorandum; that he did not recall that the Commissioners had any questions about the termination of plaintiff's employment; and that there was a short discussion about "how and when" the termination of plaintiff's employment would take place. The following day, on April 8, 2014, Mr. Noll notified plaintiff that his employment had been terminated. Plaintiff was sixty years old. When plaintiff asked Mr. Noll for the County's reason for the termination decision, Mr. Noll replied, essentially, that plaintiff was an at-will employee and that the County did not need a reason to terminate his employment. Approximately one month later, Mr. Noll emailed a copy of the two-page memorandum to the county clerk, explaining that the memorandum was intended "to document" that plaintiff was "not discriminated against in any way" when he was released as an at-will employee.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

**II.     Summary Judgment Standard**

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc.*, 726 F.3d at 1143 (quotation omitted). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id*. at 1143-44.

### III.   Age Discrimination Claim

In the pretrial order, plaintiff asserts that the County terminated his employment on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Kansas Age Discrimination in Employment Act ("KADEA"), K.S.A. § 44-1111 et seq.[1]  As plaintiff has no direct evidence of discrimination, his claim is analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012). Under *McDonnell Douglas*, plaintiff has the initial burden of establishing a prima facie

---

[1] The court considers plaintiff's claims under the ADEA and the KADEA in tandem because the same standards and burdens govern both claims. *See Nyanjom v. Hawker Beechcraft Corp.*, 641 Fed. Appx. 795, 799 (10th Cir. Jan. 28, 2016). Moreover, neither party suggests that the applicable provisions differ in any respect.

4

case of discrimination. *Id*. To set forth a prima facie case of discrimination, plaintiff must establish "(1) membership in a protected class and (2) an adverse employment action (3) that took place under circumstances giving rise to an inference of discrimination." *Id*. (citing *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007)). If he establishes a prima facie case, the burden shifts to the County to assert a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. If the County meets this burden, summary judgment against plaintiff is warranted unless he introduces evidence "that the stated nondiscriminatory reason is merely a pretext for discriminatory intent." *Id*. (citing *Simmons v. Sykes Enters.*, 647 F.3d 943, 947 (10th Cir. 2011)).

In its motion for summary judgment, the County assumes that plaintiff has sufficient evidence to establish a prima facie case. The court turns, then, to whether the County has met its burden to articulate a legitimate, nondiscriminatory reason for the employment decision. "This burden is one of production, not persuasion; it can involve no credibility assessment." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). The Tenth Circuit has characterized this burden as "exceedingly light," and the court finds that the County has carried it here. *See id*. According to defendant, the County terminated plaintiff's employment for the reasons detailed in the two-page memorandum presented by Mr. Noll to the County Commissioners during the April 7, 2014 executive session. According to the County, that memorandum describes plaintiff's insubordination and incompetence as well as his inappropriate treatment of other employees. The burden of proof, then, shifts back to plaintiff to show that the County's proffered reasons are pretextual.

5

Evidence of pretext "may take a variety of forms," including evidence tending to show "that the defendant's stated reason for the adverse employment action was false" and evidence tending to show "that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." *Carter*, 662 F.3d at 1150 (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)).  A plaintiff may also show pretext with evidence that the defendant had "shifted rationales" or that it had treated similarly situated employees differently.  *Crowe v. ADT Servs., Inc.*, 649 F.3d 1189, 1197 (10th Cir. 2011).  In essence, a plaintiff shows pretext by presenting evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  *McDonald-Cuba v. Santa Fe Protective Servs., Inc.*, 644 F.3d 1096, 1102 (10th Cir. 2011).

Viewed in the light most favorable to plaintiff, the evidence in the record is sufficient to raise a triable issue on pretext.  In its motion for summary judgment, the County asserts that Mr. Noll presented his two-page memorandum to the County Commissioners on April 7, 2014 in an effort to get their approval on the decision to terminate plaintiff's employment.  Mr. Noll testified that the County Commissioners received a copy of the memorandum; that he did not recall that the Commissioners had any questions about the termination; and that there was a short discussion about "how and when" the termination would take place.  It is uncontroverted that no other documents exist that reflect concerns about plaintiff's employment with the County and the County has come forward with no evidence of any specific discussions between Mr.

6

Noll and the County Commissioners prior to April 7, 2014 concerning plaintiff's employment with the County.[2] Mr. Noll's testimony, then, indicates that the County Commission agreed to the termination of plaintiff's employment based on the contents of the memorandum that Mr. Noll asserted was provided to them on April 7, 2014. Yet plaintiff's evidence (which the County does not dispute) reveals that the two-page memorandum authored by Mr. Noll was not even created until two weeks after plaintiff's termination and only then for the purpose of "documenting" that plaintiff was "not discriminated against in any way." A reasonable jury, then, could obviously conclude that the County Commissioners did not rely on the contents of the memorandum in deciding to terminate plaintiff's employment (because the document had not been authored yet) and that Mr. Noll did not utilize that document to obtain approval for plaintiff's termination. In the absence of Mr. Noll's memorandum, there is no evidence in the record concerning why the County and Mr. Noll agreed to terminate plaintiff's employment on April 7, 2014.

The County dismisses as insignificant the facts concerning "when or why the memo was created." According to the County, plaintiff cannot establish pretext in any event because there is no suggestion that Mr. Noll did not honestly believe the reasons he stated in the memorandum—even if it was drafted two weeks after the termination decision. The court disagrees. Viewed in the light most favorable to plaintiff, the evidence reflects that Mr. Noll asked plaintiff about his retirement plans sometime after January 26, 2014; that plaintiff indicated a desire to keep working; that Mr. Noll did not share or express any specific concerns

---

[2] While it is uncontroverted by plaintiff that Mr. Noll "began raising concerns with [plaintiff's] employment with the county commissioners starting in late February or early March 2014," the record does not reflect the nature of those concerns in any respect.

about plaintiff's employment with the County Commissioners at any time prior to April 7, 2014; and that Mr. Noll, despite his testimony to the contrary, did not provide to the County Commissioners any written documentation supporting the decision to terminate plaintiff's employment.  Moreover, there is no evidence that Mr. Noll and the County Commissioners discussed plaintiff's insubordination, incompetence or attitude at the April 7, 2014 meeting when the decision was made to terminate plaintiff's employment.  This evidence, coupled with the evidence that the memorandum was written two weeks after the termination decision for the purpose of buttressing the County's position that it had not discriminated against plaintiff, is sufficient to permit a jury to conclude that Mr. Noll did not honestly rely on the reasons set forth in the memorandum in connection with the decision to terminate plaintiff's employment.

The County also criticizes plaintiff for focusing solely on "creating a case for pretext" when, according to the County, "courts require plaintiffs to show both pretext <u>and</u> an inference of discrimination to survive summary judgment."  In support of this argument, the County directs the court to the Circuit's opinion in *Adamson v. Multi Community Diversified Servs., Inc.*, 514 F.3d 1136, 1144-45 (10th Cir. 2008).  The court rejects the County's reading of Adamson.  In *Adamson*, the Tenth Circuit explained that where a plaintiff relies on circumstantial evidence and the plaintiff has made a prima facie case of discrimination, he survives summary judgment if he comes forward with evidence of pretext or evidence that age was a determinative factor in the employment decision.  *See id.* at 1145.  Evidence of pretext alone was not sufficient for one plaintiff in *Adamson* because he had failed to satisfy the requirements for a prima facie case.  *See id.* at 1146–47.  In this case, the County does not dispute that plaintiff has established a prima facie case and, accordingly, evidence of pretext

creates the necessary inference of discrimination. *See id*. at 1146 (purpose of prima facie case under *McDonnell Douglas* analysis "is the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor"); *see also Hare v. Denver Merchandise Mart, Inc*., 255 Fed. Appx. 298, 305 (10th Cir.2007) (discriminatory animus may be inferred from pretext, and plaintiff need not provide evidence that the real reason for termination was age-related; prima facie case plus pretext is sufficient, unless defendant meets heavy burden to show alternative source for discrepancies in reasons for termination, for instance by showing that the record conclusively revealed some other nondiscriminatory reason for the action or that there was abundant and uncontroverted independent evidence that no discrimination had occurred).  Finally, the Circuit has repeatedly rejected the "pretext plus" standard in favor of a rule that permits a plaintiff to survive summary judgment with evidence supporting a prima facie case and discrediting the employer's proffered reason.  *See Jones v. Oklahoma City Pub. Schs*., 617 F.3d 1273, 1280 (10th Cir. 2010) (reversing grant of summary judgment where district court utilized "pretext plus" standard that the Circuit had "definitively rejected") (quoting *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 148 (2000) ("a plaintiff's prima facie case [of discrimination], combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated")).

In short, the County is not entitled to summary judgment on plaintiff's claim that the County terminated his employment on the basis of his age.

9

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 47) is denied.

**IT IS SO ORDERED.**

Dated this 1st day of February, 2018, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
