**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

**Francis Hubbard,**

       **Plaintiff,**

v.                                                               Case No. 16-cv-2444-CM

**Jefferson County Board of**
**County Commissioners,**

       **Defendant.**

## MEMORANDUM & ORDER

Plaintiff Francis Hubbard filed this lawsuit against the Board of County Commissioners of Jefferson County, Kansas alleging that the County terminated his employment based on age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Kansas Age Discrimination in Employment Act, K.S.A. § 44-1111 et seq. The court denied defendant's motion for summary judgment in February 2018 and plaintiff's claim was tried to a jury beginning on April 9, 2018. On April 13, 2018, the jury returned a verdict in favor of plaintiff. Specifically, the jury found that defendant terminated plaintiff's employment based on age; awarded plaintiff lost wages in the amount of $69,827.08; awarded plaintiff $2000.00 in compensatory damages for emotional distress; and found that defendant's conduct was willful. In light of the jury's finding that defendant's conduct was willful, the court included in the judgment liquidated damages in the amount of $69,827.08. *See* 29 U.S.C. § 216(b) & 626(b). On April 25, 2018, the court amended the judgment in this case to reflect an additional amount of $7,017.90 in damages for front pay.

This matter is now before the court on defendant's renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). In resolving defendant's renewed motion for judgment as a matter of law, the court draws all reasonable inferences in favor of plaintiff, the nonmoving party. *See In re Cox Enterprises, Inc.*, 871 F.3d 1093 1096 (10th Cir. 2017). The court may grant judgment as a matter of law only when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *See id.* (quoting Fed. R. Civ. P. 50(a)(1)). Stated another way, "judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position." *Id.* (citations and quotations omitted).

In its motion, defendant asserts that plaintiff, at trial, did not prove a "prima facie case" of age discrimination and, in any event, failed to present legally sufficient evidence of pretext. Indeed, defendant's brief is based solely on plaintiff's purported inability to establish at trial a prima facie case of discrimination and his inability to come forward with sufficient evidence of pretext. By asking the court to apply the *McDonnell Douglas* framework in assessing defendant's post-trial motion, defendant has committed a "procedural misstep" sufficient to warrant denial of the motion. *See Barrett v. Salt Lake County*, 754 F.3d 864, 866-867 (10th Cir. 2014). As the Circuit explained in *Barrett*, the *McDonnell Douglas* framework plays no role in assessing post-trial JMOL motions. *Id*. at 867. By this point in the proceedings, the familiar burden-shifting framework "drops out" entirely and the court asks only the dispositive underlying question—whether plaintiff presented enough evidence to warrant a jury finding that defendant terminated plaintiff's employment based on age? *See id*. Because the Circuit has

"refused to extend *McDonnell Douglas* burden shifting into post-trial JMOL motions practice," *id.*, defendant's motion is denied.[1]

But even if defendant had asked the court to decide the underlying JMOL question rather than apply the *McDonnell Douglas* framework, the court would have denied the motion. Viewing the evidence in the light most favorable to the jury's verdict, *see id.* at 867-68, the court finds sufficient evidence from which a rational jury could have found that defendant terminated plaintiff's employment based on his age. To begin, plaintiff presented evidence that Bill Noll, the County's newly hired Director of Public Works and the sole decisionmaker in the case, sought to rebuild the Public Works department and, toward that end, targeted long-term older supervisory employees for termination. The jury heard evidence that Mr. Noll asked plaintiff and other older supervisory employees about their specific retirement plans. While defendant urges that these inquiries were innocuous and reasonably tied to Mr. Noll's need for "succession planning," the jury clearly (and reasonably) rejected that argument. Mr. Noll testified at trial that the County Clerk's office told him for purposes of succession planning that there were employees in his department that were at or near the time of retirement. But Linda Buttron, the County Clerk and the acting head of Human Resources, testified that the Clerk's office had no responsibilities relating to succession planning and that, to her knowledge, no one in her department ever told Mr. Noll that his department had employees who were near or eligible for retirement. She further testified that she had never heard Mr. Noll discuss succession planning

---

[1] Plaintiff's briefing is similarly tied exclusively to the *McDonnell Douglas* framework and, in fact, he seeks permission to file a surreply to flesh out further whether he is required to show as part of his prima facie case that he was replaced by someone outside the protected class. Because the resolution of that issue has no bearing on the court's analysis at this stage of the proceedings, plaintiff's motion for leave to file the surreply is denied.

3

at any time. The evidence, then, was sufficient to permit the jury to reject Mr. Noll's testimony that his inquiries about retirement plans stemmed from a discussion with someone in the Clerk's office about succession planning and that he had been told by someone in that office that he had employees in his department who were near or eligible for retirement. And if the jury determined that Mr. Noll was not in fact asking older employees about their retirement plans for purposes of succession planning, then the jury (in the absence of any other explanation for those inquiries) could have inferred that Mr. Noll's inquiries reflected an age-related animus. Moreover, the jury was permitted, if it determined that Mr. Noll's testimony lacked credibility on this issue, to discount Mr. Noll's testimony on other issues even if that testimony was not specifically contradicted by other witnesses.

In addition to evidence that Mr. Noll asked older, supervisory employees about their retirement plans, the jury heard evidence that Mr. Noll terminated the employment (or encouraged the retirement) of several older supervisory employees. Less than three months after he became Director of Public Works, Mr. Noll terminated plaintiff (a 60-year-old foreman who had worked for the County for over 18 years) and Allen Lowrance (a 55-year-old foreman who had worked for the County for over 30 years). He had previously asked both plaintiff and Mr. Lowrance about their retirement plans. He also asked Gary Thoma (a 67-year old equipment manager who had worked for the County for more than 37 years) when he planned to retire. Mr. Thoma testified that, in response to Mr. Noll's inquiry, he asked whether two weeks would be sufficient notice of his retirement. According to Mr. Thoma, he perceived that Mr. Noll was "cleaning house" and that it was in his best interest to retire.

4

The jury heard evidence that none of these employees, at any time, had any performance issues documented by the County. Despite the fact that County policy required that employees receive an annual performance evaluation, plaintiff's most recent evaluation occurred in 2012, and that evaluation contained no information that plaintiff's employment was in jeopardy in any way. In fact, the performance evaluations introduced at trial reflected that plaintiff's performance was perceived as positive in a variety of aspects. There was no written documentation about any performance issues relating to plaintiff and no evidence that plaintiff had been subjected to any disciplinary action of any kind over the course of his employment. The jury, then, could have found it difficult to believe that plaintiff's performance had declined so dramatically in such a short period of time.

Because neither the County nor Mr. Noll ever documented any performance-related issues with respect to plaintiff, the termination memorandum authored by Mr. Noll concerning the reasons for plaintiff's termination was the sole document introduced at trial to support Mr. Noll's termination decision. Through deposition testimony read at trial, the jury heard that Mr. Noll had previously testified under oath that he had provided a copy of that termination memorandum to the County Commissioners on April 7, 2014, the day prior to plaintiff's discharge. At trial, Mr. Noll wavered on this issue and testified that he either provided the Commissioners with a copy of the memorandum or, alternatively, read portions of the memorandum to the Commissioners at the April 7, 2014 meeting. But other evidence suggested that Mr. Noll did not create the memorandum until roughly two weeks after plaintiff's discharge and that he may have done so in response to an article in the local paper reporting that Mr. Noll

had "sent packing" two long-term County employees, including plaintiff, without any explanation and without any notice.

Specifically, the termination memorandum was attached to a May 2, 2014 email that Mr. Noll sent to Linda Buttron, the County Clerk, with instructions that the memorandum should not be provided to the public or placed in plaintiff's personnel file but was for the purpose of "documenting" that plaintiff was not "discriminated against in any way" when he was terminated as an "at will" employee. Ms. Buttron testified that her receipt of the May 2, 2014 email was the first time she was made aware that Mr. Noll had authored a termination memorandum with respect to plaintiff, despite the fact that she attended the April 7, 2014 executive session with the County Commissioners during which Mr. Noll claimed to have distributed or read from the memorandum. The memorandum itself is written utilizing the past tense, strongly suggesting that the termination had already occurred at the time the memorandum was authored. Plaintiff did not see a copy of the termination memorandum until long after the termination of his employment. There was also evidence that the termination memorandum was not file-stamped by the Clerk's office despite evidence that it would have been file-stamped had it been received by the Clerk's office in the normal course of business. All of this evidence, then, was more than adequate to establish that Mr. Noll, contrary to his testimony, authored the termination memorandum long after the termination of plaintiff's employment.

Defendant's argument that the timing of the creation of the memorandum is not relevant misses the mark. While Mr. Noll, as argued by defendant, clearly could have relied on the reasons set forth in the memorandum regardless of when (or even whether) he drafted that

6

memorandum, the issue of when the memorandum was created is significant for at least two reasons. First, evidence that Mr. Noll did not create the document when he says he created it goes directly to Mr. Noll's credibility as a witness. Defendant cannot dispute that Mr. Noll was the key witness for the defendant in this case and his credibility, as the decisionmaker, was critical to the jury's resolution of the case. Second, evidence that Mr. Noll created the termination memorandum not contemporaneously with the termination decision but two weeks after the fact—and in response to a newspaper article describing Mr. Noll's decision in a negative light—tends to suggest that Mr. Noll fabricated the termination memorandum to cover up a discriminatory motive.

The jury could have similarly discounted the specific reasons set forth by Mr. Noll in the termination memorandum for plaintiff's discharge. As an initial matter, the evidence at trial was undisputed that Mr. Noll, at the time he advised plaintiff that his employment was terminated, did not provide plaintiff with any reason for that decision. Rather, Mr. Noll simply told plaintiff that plaintiff was an "at will" employee; that Mr. Noll was not required to give him an explanation for the decision; and that Mr. Noll did not need a reason to terminate plaintiff's employment. The jury, then, could have concluded that Mr. Noll, at the time he terminated plaintiff's employment, was not in fact basing that decision on any of the myriad reasons set forth in the termination memorandum that, as the jury likely found, was created two weeks later. And those reasons were clearly not persuasive to the jury. Mr. Noll, for example, highlighted plaintiff's rudeness and treatment of other employees. But the jury heard ample evidence that numerous employees in the Road and Bridge department utilized colorful language just as plaintiff did such that Mr. Noll likely would not have terminated plaintiff for that behavior,

particularly without any warning about that behavior. Mr. Noll also highlighted plaintiff's purported failure to give Mr. Noll his phone messages, but the jury heard evidence that plaintiff, as a working foreman, was rarely in the office to answer the phones and never received any messages for Mr. Noll.

In sum, the evidence at trial clearly supports a rational inference that defendant discriminated against plaintiff based on age when it terminated plaintiff's employment. To be sure, as urged by defendant, there was ample evidence from which jury could have found in favor of defendant. The jury could have found that Mr. Noll, as a new supervisor, was entitled to enforce different performance standards than his predecessors and that Mr. Noll, regardless of plaintiff's past performance, terminated plaintiff for performance-related reasons. The jury could have found that Mr. Noll had legitimate reasons for terminating the employment of each employee that Mr. Noll terminated; that Mr. Noll in fact created the termination memorandum contemporaneous with the termination decision; and that Mr. Noll's retirement inquiries were reasonable and lawful based on the circumstances. But the appropriate inquiry at this juncture is not what the jury could have found but whether there is a legally sufficient evidentiary basis for what the jury did find. *Wilson v. Tulsa Junior Coll.*, 164 F.3d 534, 536 (10th Cir. 1998). And under that standard, the court does not weigh the evidence, pass on the credibility of witnesses or substitute its conclusions for those of the jury—all of which defendant asks the court to do. *See id*.

The motion for judgment as a matter of law is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for judgment as a matter of law (doc. 125) is **denied** and plaintiff's motion for leave to file a surreply (doc. 139) is **denied**.

**IT IS SO ORDERED.**

Dated this 10th day of July, 2018, at Kansas City, Kansas.

/s/ Carlos Murguia
HON. CARLOS MURGUIA
United States District Judge